UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANITA EVANGELIST,

                Plaintiff,                      CIV. NO. 12-15687

        v.                             HON. TERRENCE G. BERG

                                      HON. R. STEVEN WHALEN

GREEN TREE SERVICING, LLC,
BANK OF AMERICA, N.A. and
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS,

                Defendants.
_____/

**OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS TO
DISMISS (DKTS. 4 & 17) AND DENYING PLAINTIFF'S MOTION TO
STAY EVICTION PROCEEDINGS IN THE 36th DISTRICT COURT (DKT. 20)**

      Anita Evangelist, proceeding *in pro per*, ("Plaintiff") initiated this lawsuit in

the Wayne County Circuit Court seeking to challenge the foreclosure of her

mortgage, and Defendants removed it to this Court.  Defendants' motions to dismiss

(Dkts. 4 & 17) and Plaintiff's motion to stay summary eviction proceedings in the

36th District Court (Dkt. 20) are pending.

      For the reasons set forth below, Defendants' motions to dismiss (Dkts. 4 &

17) are **GRANTED** and Plaintiff's Complaint is **DISMISSED WITH**

**PREJUDICE**.  Furthermore, since Plaintiff's Complaint fails to state a claim upon

which relief can be granted, her motion to stay summary eviction proceedings in the

36th District Court (Dkt. 20) is **DENIED**.

# I. BACKGROUND

On June 8, 2005, Plaintiff executed a note and mortgage for $80,000 ("First Mortgage") that secured real property located at 9001 Braile, Detroit, MI 48228. The First Mortgage was recorded in Liber 42946, Page 927 of the Wayne County Register of Deeds (Dkt. 4; Ex. A; First Mortgage). Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") was designated as the original mortgagee and nominee for the lender, America's Wholesale Lender, in the First Mortgage. Defendant Bank of America, N.A. ("Bank of America") acted as the servicer of the First Mortgage prior to August 31, 2011. The First Mortgage was subsequently assigned to Defendant Green Tree Servicing LLC ("Green Tree"), via an assignment recorded in Liber 49639, Page 1091 of the Wayne County Register of Deeds (Dkt. 4; Ex. B; Assignment). Plaintiff also obtained a $7,500 line of credit ("Line of Credit") from non-party Countrywide Home Loans, Inc.; at all relevant times, Defendant Bank of America acted as the servicer of the Line of Credit. As security for the Line of Credit, Plaintiff granted a Future Advanced Mortgage ("Second Mortgage") to MERS (Dkt. 17; Ex. 2, Second Mortgage).

In November 2011, Plaintiff defaulted on the First Mortgage by failing to make payments. Defendant Green Tree then commenced foreclosure proceedings. On June 14, 2012, Defendant Green Tree purchased the property at a sheriff's sale for $83,995.81; the Sheriff's Deed was recorded in Liber 49967, Page 1454 of the Wayne County Register of Deeds. Plaintiff failed to redeem the property by the

2

December 14, 2012 redemption expiration date set forth in the Sheriff's Deed (Dkt. 4; Ex. C; Sheriff's Deed).

Plaintiff filed this case in the Wayne County Circuit Court on December 11, 2012, requesting that the Court declare the First Mortgage invalid and declaring Plaintiff to be the fee simple owner of the property.  Defendants timely removed this action from state court, based on diversity jurisdiction. Summary eviction proceedings currently remain pending in Michigan State Court.[1]

## II.  ANALYSIS

### A.  Standard of Review

"The purpose of Rule 12(b)(6) is to allow a defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief if all the facts and allegations in the complaint are taken as true." *Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 419 (6th Cir. 2001) (citing *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993)). Under Rule 12(b)(6), the complaint is viewed in the light most favorable to the plaintiff, the allegations in the complaint are accepted as true, and all reasonable inferences are drawn in favor of the plaintiff.  *See Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  "[A] judge may not grant a Rule 12(b)(6) motion based on a disbelief of a complaint's factual allegations."  *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 228–29 (6th Cir. 1997) (quoting *Columbia Nat'l Res., Inc. v.*

---

[1] Although Plaintiff filed a motion to stay eviction proceedings in the 36th District Court (Dkt. 20), during oral argument on May 15, 2013 in this case, the parties suggested that Plaintiff defaulted in the state eviction action.  However, the parties also stated that the default judgment of eviction was being appealed to the Wayne County Circuit Court.

*Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "However, while liberal, this standard of review does require more than the bare assertion of legal conclusions." *Tatum*, 58 F.3d at 1109; *Tackett v. M & G Polymers, USA, L.L.C.*, 561 F.3d 478, 488 (6th Cir. 2009). "To survive a motion to dismiss, [a plaintiff] must plead 'enough factual matter' that, when taken as true, 'state [s] a claim to relief that is plausible on its face.' *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Plausibility requires showing more than the "sheer possibility" of relief but less than a 'probab[le]' entitlement to relief. *Ashcroft v. Iqbal*, [556 U.S. 662, 678] (2009*)." Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 280 (6th Cir. 2010). " Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

Consideration of a motion to dismiss under Rule 12(b)(6) is confined to the pleadings. *See Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008). Assessment of the facial sufficiency of the complaint ordinarily must be undertaken without resort to matters outside the pleadings. *See Wysocki v. Int'l Bus. Mach. Corp.*, 607 F.3d 1102, 1104 (6th Cir. 2010). However, "documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed.R.Civ.P. 10(c)); *see also Koubriti v. Convertino*, 593 F.3d 459, 463 n. 1 (6th Cir. 2010). Even if a document is not attached to a complaint or answer, "when a document is referred to in the pleadings and is integral to the

4

claims, it may be considered without converting a motion to dismiss into one for summary judgment." *Commercial Money Ctr.*, 508 F.3d at 335–36.  If the plaintiff does not directly refer to a document in the pleadings, but that document governs the plaintiff's rights and is necessarily incorporated by reference, then the motion need not be converted to one for summary judgment. *See Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 89 (6th Cir. 1997).  In addition, "a court may consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment." *Northville Downs v. Granholm*, 622 F.3d 579 (6th Cir. 2010) (citing *Commercial Money Ctr., Inc.*, 508 F.3d at 335–36).

### B.  Plaintiff's Complaint Fails to State a Claim

As a preliminary matter, the Court notes that several similar – if not quite identical – *pro se* civil complaints have been filed in this District challenging mortgage foreclosures.[2]  The pleadings in these cases all appear to have come from the same source; they utilize an identical single-spaced "courier new" typeface, and contain the same important-sounding buzz words and legal mumbo jumbo.  A common theme amongst these suits is that they make nearly incomprehensible allegations about "robo-signers," "demand…quiet title," cite sections of the "U.C.C." allegedly concerning "chattel paper," obtusely reference violations of "REMIC law,"

---

[2]  *See, e.g., Ross v. Wells Fargo,* E.D. Mich. Case No. 12-13387; *Ybarra v. Wells Fargo*, E.D. Mich. Case No. 12-12293; *Kloss v. RBS*, E.D. Mich. Case No. 13-11025; *Marks v. Bank of Am.*, E.D. Mich. Case No. 12-11364; *Duncan v. Bank of Am.,* E.D. Mich. Case No. 12-12510; *Brown v. Chase Bank,* E.D. Mich. Case No. 12-11440; *Moore v. Bank of Am.,* E.D. Mich. Case No. 12-12907; *Yopp v. MERS,* E.D. Mich. Case No. 12-10804; *Easton v. Fannie Mae*, E.D. Mich. Case No. 12-10663.  There may be more, the cited cases are just the ones the Court was able to identify.

and make conclusory allegations of "fraud" and "silent fraud" (Dkt. 1; Compl.)[3]
Curiously, the first paragraphs of these complaints identify the plaintiffs as
"temporarily *In Pro Per*," suggesting the possibility that there may be an as yet
unknown attorney acting as the Wizard of Oz, manipulating knobs and levers
behind a curtain, and aiding these "*pro se*" plaintiffs in litigating these cases.  In an
effort to pull aside the curtain, the Court questioned Plaintiff (and questioned the
*pro se* plaintiff in a related case with similar pleadings – *Young v. Green Tree,* E.D.
Mich. Case No. 12–14738) about whether they received any assistance preparing
the pleadings in their cases, which were consistent with this pattern.  Before
recounting what transpired at the hearings, it is important to recount what
happened a few days prior to the hearings.

Less than a week before the hearings, an attorney – F. Anthony Lubkin –
called the Court's Case Manager and stated that he was planning on representing
the plaintiff in one of these "similar source" cases:  *Young v. Green Tree,* E.D. Mich.
Case No. 12-14738.[4]  Mr. Lubkin requested that the Court adjourn the May 15,

[3] Plaintiff's Complaint also echoes themes of a "show me the note" type argument.  For those
interested in a thorough analysis of the infirmities of these types of claims, albeit under Minnesotan
law, *Welk v. GMAC Mortg., LLC,* 850 F.Supp.2d 976 (D. Minn. 2012) is enlightening reading.  *Welk*
aptly describes the "show me the note" argument as a claim that: "generally argues that, because the
entity that holds her mortgage (say, MERS) is not the same as the entity that holds her note (say,
U.S. Bank), the mortgage on her home or the foreclosure of that mortgage is invalid."  *Id.* at 980.

[4] Mr. Lubkin did not express any intent to represent Plaintiff Evangelist in the instant case,
although, at the hearing in this case, Ms. Evangelist did state that Mr. Lubkin had assisted her in
connection with her state eviction case regarding the property at issue in this case.  Mr. Lubkin
therefore has represented this Plaintiff, Ms. Evangelist, in the past and is currently representing
another plaintiff before the Court, Mr. Young, whose complaint also matches the pattern described
above.

6

2013 hearing on the defendants' motions to dismiss (the *Young* case and this case were noticed for hearing on the same day), and indicated that he was planning on filing amended pleadings. As Mr. Lubkin had not yet filed an appearance on Mr. Young's behalf, the Court declined to adjourn the hearing. On the morning of May 15, 2013 (the day of the hearings), Mr. Lubkin filed an appearance on behalf of Mr. Young (Case No. 12-14738; Dkt. 17), but the hearings went forward as scheduled.

Plaintiff Anita Evangelist appeared at the May 15, 2013 hearings, and represented herself. The Court questioned Plaintiff about whether an attorney helped her in preparing the pleadings she filed in this case. She denied receiving any help from an attorney, but her testimony was inconsistent and evasive. At first, Plaintiff claimed that she wrote all of her pleadings herself, but she eventually admitted that a "group of friends" met and put these "*pro* se" pleadings together. The Court named several of the other *pro* se plaintiffs with similar filings (*see* footnote 2, above), and Plaintiff acknowledged knowing these individuals and confirmed that these people were members of the "group." Furthermore, Plaintiff admitted that Mr. Lubkin represented her in the parallel eviction proceedings concerning the property at issue in this case.

Mr. Lubkin, who was present in Court for the later motion hearing on the *Young* case, then approached the Court's lectern and sought to address the Court during the hearing in this matter. Mr. Lubkin denied playing any part in helping the plaintiffs prepare their pleadings in these cases; in fact, Mr. Lubkin denigrated the *pro se* pleadings as "gobbledygook" (there can be little debate on this point). Mr.

7

Lubkin confirmed that he had represented Plaintiff Evangelist in the parallel

eviction proceedings, and he also acknowledged knowing several of the other "*pro*

*se*" plaintiffs identified by the Court. Mr. Lubkin stated that he may be filing

appearances in some of their cases in the future.[5]  Despite his acknowledged

acquaintanceship with some of the plaintiffs in these "*pro* se" cases, and his prior

representation of Ms. Evangelist in state court, Mr. Lubkin informed the Court that

he did not ghostwrite any pleadings for *pro se* litigants challenging foreclosures in

federal court.  The Court noted during the hearing that it viewed ghostwriting,

where an attorney misleads the Court by posing as a *pro se* party, to be unethical

and subject to serious sanctions.[6]  It is also professional misconduct for an attorney

---

[5] At present, the only mortgage foreclosure-related case that Mr. Lubkin has appeared in (in this District) is *Young v. Green Tree*, Case No. 12-14738.

[6] The federal courts have almost universally condemned ghostwriting. *See, e.g., Duran v. Carris*, 238 F.3d 1268, 1272-73 (10th Cir. 2001) (finding that ghostwriting constitutes a "misrepresentation to this court"); *Ellis v. Maine*, 448 F.2d 1325, 1328 (1st Cir. 1971) ("If a brief is prepared in any substantial part by a member of the bar, it must be signed by him."); *Delso v. Trustees For Ret. Plan For Hourly Employees of Merck & Co., Inc.,* Case. No. CIVA 04–3009 AET, 2007 WL 766349 (D.N.J. Mar. 6, 2007) (holding that undisclosed ghostwriting violates several ethics rules and the spirit of Fed. R. Civ. P. 11); *Wesley v. Don Stein Buick, Inc.*, 987 F. Supp. 884, 887 (D. Kan. 1997) (requiring *pro se* defendant to disclose whether she was represented by attorney); *Laremont-Lopez v. Se. Tidewater Opportunity Ctr.*, 968 F. Supp. 1075, 1077 (E.D. Va. 1997) ("[T]he Court considers it improper for lawyers to draft or assist in drafting complaints or other documents submitted to the Court on behalf of litigants designated as *pro se*."); *United States v. Eleven Vehicles*, 966 F. Supp. 361, 367 (E.D. Pa. 1997) ("Important policy considerations militate against validating an arrangement wherein a party appears *pro se* while in reality the party is receiving legal assistance from a licensed attorney."); *Johnson v. Bd. of County Comm'rs*, 868 F. Supp. 1226, 1232 (D. Colo. 1994) ("Having a litigant appear to be *pro se* when in truth an attorney is authoring pleadings and necessarily guiding the course of the litigation with an unseen hand is ingenuous to say the least; it is far below the level of candor which must be met by members of the bar."); *In re Brown*, 354 B.R. 535, 545 (Bankr. N.D. Okla. 2006) ("[I]f an attorney writes a pleading, he or she has a duty to make sure that the Court knows he or she wrote it. The Court is not required to play a game of 'catch-me-if-you-can' with a ghostwriter. All counsel owe a duty of candor to every court in which they appear. Inherent in that duty is the requirement that counsel disclose his or her involvement in the case.");

to actively misrepresent to the Court what his or her role is in preparing pleadings,[7] or to intentionally file frivolous claims solely for the purpose of delaying mortgage foreclosures.[8]

Despite having asked direct questions of Plaintiff regarding the source of these pleadings, the Court is not satisfied that Plaintiff provided a clear and complete response.  It was obvious that Plaintiff did not want to disclose the whole story of where these pleadings came from, even though the most cursory examination of them reveals they are from a common source.  Although Mr. Lubkin is not the attorney of record for this case, the Court will mail a copy of this order to his office and email a copy to the address he listed on his appearance in *Young v. Green Tree*, to ensure that he is made aware of the Court's concerns.[9]  The Court will also forward a copy of this order to the Chief Judge of this Court, so that the

---

*In re Mungo*, 305 B.R. 762, 767 (Bankr. D.S.C. 2003) ("The act of anonymously drafting pleadings for which a client appears and signs *pro se* is often termed 'ghost-writing.' ... [T]he Court recognizes the act of ghost-writing as...in contravention of the policies and procedures set forth in...the Federal Rules of Civil Procedure."); *Ostrovsky v. Monroe (In re Ellingson)*, 230 B.R. 426, 435 n.12 (Bankr. D. Mont. 1999) (holding that court rules, particularly Fed. R. Civ. P. 11, as well as ABA Standing Committee Opinion 1414, prohibit ghostwriting).

[7]  Every attorney owes a duty of candor to the court.  M.R.P.C. 3.3(a)(1).

[8] *See, e.g.*, *Landis v. Fannie Mae*, --- F.Supp.2d ---, Case No. 12–11996, 2013 WL 489444 (E.D. Mich. Feb. 8, 2013) (sanctioning attorney for filing frivolous, "boiler-plate," pleadings in cases challenging mortgage foreclosures); *see also, Welk v. GMAC Mortg., LLC,* 850 F.Supp.2d 976 (D. Minn. 2012) (imposing $50,000 sanction against attorney for filing frivolous cases challenging mortgage foreclosures).

[9]  The Court was presented with no evidence suggesting that Mr. Lubkin engaged in ghostwriting; indeed, he is on record stating that he did *not* prepare the pleadings at issue.  Nonetheless, as an attorney who has advised two of the *pro se* plaintiffs who filed these pleadings, and who is acquainted with several other plaintiffs, he is well positioned to convey to this group the ethical problems presented *if* an attorney is intentionally hiding his or her role in preparing court pleadings.

9

court as a whole will be on notice of the existence of these "cookie-cutter" "*pro se*" filings, and can better guard against any unethical ghostwriting in mortgage foreclosure-related cases.

Turning now to the substance of Plaintiff's Complaint in this case – there are several written decisions in this District dismissing several of those strikingly similar *pro se* complaints that were brought to the attention of the Plaintiff and Mr. Lubkin. *See, e.g., Brown v. Chase Bank, N.A.*, Case No. 12–11440, 2013 WL 1278523 (E.D. Mich. Jan. 18, 2013) (Komives, M.J.) *report and recommendation adopted,* 2013 WL 1281919 (E.D. Mich. Mar. 26, 2013) (Lawson, J.); *Ross v. Wells Fargo Bank, N.A.*, Case No. 12–13387, 2013 WL 173771 (E.D. Mich. Jan. 16, 2013) (Steeh, J.); *Duncan v. Bank of Am., N.A.*, Case No. 12–12510, 2012 WL 5383147 (E.D. Mich. Oct. 15, 2012) (Randon, M.J.) *report and recommendation adopted,* 2012 WL 5383156 (E.D. Mich. Nov. 1, 2012) (Friedman, J.); *Ybarra v. Wells Fargo*, Case No. 12–12293, 2013 WL 593854 (E.D. Mich. Jan. 18, 2013) (Komives, M.J.) *report and recommendation adopted,* 2013 WL 593482 (E.D. Mich. Feb. 15, 2013) (Edmunds, J.); *Marks v. Bank of Am.*, Case No. 12–11364, 2012 WL 7657888 (E.D. Mich. Nov. 1, 2012) (Majzoub, M.J.) *report and recommendation adopted,* 2013 WL 823413 (E.D. Mich. Mar. 6, 2013) (Cook, J.). Perhaps not surprisingly, Plaintiff's Complaint (like the other virtually identical complaints that preceded it) fails to state a claim upon which relief can be granted.

The prior decisions thoroughly explain [10] why these sorts of jargon-laden complaints fail to state a claim upon which relief can be granted, and the Court will not reiterate all of their reasoning here.

Plaintiff's Complaint in this case fails to state a claim in several respects:

### 1)  *General Insufficiency of Plaintiff's Complaint*

At the outset, Plaintiff's Complaint wholly fails to satisfy the requirements of Fed. R. Civ. P. 8.  It is devoid of any specific factual allegations and contains no specified "counts" or "causes of action."  Rather, Plaintiff's Complaint consists entirely of broad statements of general legal principles (of dubious applicability) and conclusory assertions that Defendants defrauded Plaintiff.  The Complaint does not provide any factual information about the property, mortgage, or foreclosure at issue, or allege any identifiable acts or omissions on the part of Defendants.  "[B]are assertions," such as those that "amount to nothing more than a 'formulaic recitation of the elements'" of a claim, can provide context to the factual allegations, but are insufficient to state a claim for relief and must be disregarded.  *Iqbal*, 556 U.S. at 681 (quoting *Twombly*, 550 U.S. at 555).

Simply put, Plaintiff has failed to provide a short and plain statement of any plausible claim for legal relief in her Complaint, and has failed to support with

---

[10] Magistrate Judge Komives provides a particularly cogent and comprehensive discussion  of these claims (and why they fail) in *Brown v. Chase Bank, N.A.*, Case No. 12–11440, 2013 WL 1278523 (E.D. Mich. Jan. 18, 2013) (Komives, M.J.) *report and recommendation adopted,* 2013 WL 1281919 (E.D. Mich. Mar. 26, 2013) (Lawson, J.).

11

specific facts any of the claims that her Complaint – even under the most liberal construction.

### 2) *Plaintiff's Fraud Claim Lacks Particularity*

The title of Plaintiff's Complaint references "Mortgage Assignment Fraud/Securities Fraud/Servicing Fraud" (Dkt. 1; Compl., at 1). Scattered throughout the Complaint are various assertions that Defendants committed fraud, "silent fraud" or that certain documents are fraudulent. Apart from simply using the word "fraud," however, the Complaint does not allege any specific *actions* on the part of Defendants that could be considered fraudulent. Plaintiff does not allege – as required by Fed. R. Civ. P. 9(b) – *who* made fraudulent statements or omissions, *what* those statements were, *when* they were made, or *how* she relied on them to her detriment. Plaintiff's conclusory allegations are insufficient to state a claim of fraud.[11] *See Harvey v. PNC Bank*, Case No. 12–10620, 2012 WL 2524285, at *2 (E.D. Mich. June 29, 2012) (Hood, J.); *Elson v. Deutsche Bank Nat'l Trust Co.*, No. 11–14100, 2012 WL 1902916, at *10 (E.D. Mich. May 25, 2012) (Rosen, C.J.).

### 3) *Validity of Assignment*

To the extent Plaintiff seeks to challenge the validity of the assignment to or from Defendant MERS, she lacks standing to pursue such a claim. Any purported irregularities in the assignments to or from MERS do not relieve Plaintiff of the indebtedness, or provide a basis upon which Plaintiff can challenge the assignment.

---

[11] The Court questioned Plaintiff during the motion hearing as to whether she was aware of any specific misrepresentations, lies, or false statements by Defendants, but she was unable to identify any such conduct.

*See Livonia Prop. Holdings, LLC v. 12840–12976 Farmington Rd. Holdings, LLC*, 717 F.Supp.2d 724, 736–37 (E.D. Mich. 2010) (Feikens, J.), *aff'd*, 399 Fed. Appx. 97, 102–03 (6th Cir. 2010).

### 4) *Mortgage Electronic Registration System (MERS)*

Plaintiff's Complaint also makes several cryptic allegations against Defendant Mortgage Electronic Registration System (MERS); for example, "Defendant…MERS illegal and fraudulent interest is forbidden by law throughout the State of Michigan and cannot legally nor lawfully be a party to a contract" (Dkt. 1; Compl. ¶ 38). Plaintiff also cites the Michigan Court of Appeals' decision in *Residential Funding Co., LLC v. Saurman*, 292 Mich. App. 321, 807 N.W.2d 412 (2011) *rev'd*, 490 Mich. 909, 805 N.W.2d 183 (2011).

In *Saurman*, the Court of Appeals considered whether MERS, which was not named as the lender but was designated the mortgagee as a nominee for the lender, could foreclose by advertisement under MCL § 600.3204. The Court of Appeals held that MERS could not invoke MCL § 600.3204, because, as only a nominee of the lender, it did not itself have an interest in the indebtedness itself, but only an interest in the property. Plaintiff's reliance on the Court of Appeals' decision *Saurman* is unavailing, however, because the Michigan Supreme Court *reversed* the decision of the Court of Appeals, *see Saurman*, 805 N.W.2d at 183–84, and found that MERS did have an interest in the indebtedness and thus could foreclose by advertisement. Without more, Plaintiff's vague contentions challenging the involvement of MERS fail to state a claim upon which relief may be granted.

13

### 5)  MCL § 600.2109

In the title of her Complaint, Plaintiff asserts that Defendants violated MCL § 600.2109, which provides:

> All conveyances and other instruments authorized by law to be filed or recorded, and which shall be acknowledged or proved according to law, and if the same shall have been filed or recorded, the record, or a transcript of the record, or a copy of the instrument on file certified by the officer in whose office the same may have been filed or recorded, may be read in evidence in any court within this state without further proof thereof; but the effect of such evidence may be rebutted by other competent testimony.

MCL § 600.2109.  Apart from the fact that Plaintiff has failed to allege any facts relating to this claim, MCL § 600.2109 is wholly inapplicable.  This statutory provision establishes a rule for the introduction of evidence in court, indicating that a duly filed and recorded instrument, or a certified copy of one, "may be read in evidence in any court…"  It has does not regulate the recording of instruments nor does it create any cause of action. *See Ethridge v. Countrywide Home Loans, Inc.*, Case No. 12–10705, 2012 WL 5389694, at *6 (E.D. Mich. Oct. 16, 2012) (Michelson, M.J.), *report and recommendation adopted*, 2012 WL 5389343 (E.D. Mich. Nov. 2, 2012) (Edmunds, J.); *Easton v. Fannie Mae*, Case No. 12–10663, 2012 WL 1931536, at *3 (E.D. Mich. May 29, 2012) (Steeh, J.); *Stafford v. Mortgage Elec. Registration Sys., Inc.*, Case No. 12–10798, 2012 WL 1564701, at *4 (E.D. Mich. May 2, 2012) (Cohn, J.).

### 6)  Fair Debt Collection Practices Act

Plaintiff also appears to be attempting to assert a claim under the Fair Debt Collection Practices Act (FDCPA) (Dkt. 1; Compl ¶ 31 & Dkt. 12 at 7).  The Sixth

14

Circuit recently held that mortgage foreclosure is "debt collection" under the FDCPA, 15 U.S.C. § 1692. *Glazer v. Chase Home Finance LLC*, 704 F.3d 453 (6th Cir. 2013). Notwithstanding this holding, there are a number of exceptions to the FDCPA's definition of who constitutes a "debt collector." 15 U.S.C. § 1692a(6). As was the case in *Glazer*, one exception is relevant here: "the term 'debt collector' does not include any person attempting to collect 'any debt owed or due or asserted to be owed or due another to the extent such activity ... concerns a debt which was not in default at the time it was obtained by such person.'" 704 F.3d at 457 (citing 15 U.S.C. § 1692a(6)(F)(iii)). The Sixth Circuit held that this exception applies to mortgage servicers, regardless of whether they own the debt obligation they service. *Id*. Indeed, the Sixth Circuit reasoned that "[r]equiring debt ownership would render the exception nugatory." *Id*. (citation omitted). Here, Defendant Green Tree was the servicer of the debt *before the debt went into default* and the foreclosing party after Plaintiff defaulted. Thus, the FDCPA does not apply.

Further, even if Defendants were "debt collectors," as defined in the FDCPA, Plaintiff has done nothing more than speculate that Defendants violated the provisions of the FDCPA. The FDCPA allegations in the Complaint do not provide sufficient detail to satisfy the "plausibility" requirement set forth in *Iqbal, supra*.

### 7) Uniform Commercial Code

Plaintiff also appears to assert a claim based on Articles 3 and 9 of the Uniform Commercial Code (Dkt. 1; Compl., ¶¶ 8–10). Again, Plaintiff has failed to cite any specific provision that was violated, or to allege any facts to support a claim

15

based on Article 3.  Further, any such claim is without merit as a matter of law. "Article 3 of the UCC does not apply to a mortgage for real property, because it is not a negotiable instrument." *Pace v. Bank of America, N.A.,* No. 12–12014, 2012 WL 5929931, at *2 (E.D. Mich. Nov. 27, 2012) (O'Meara, J.); *see also, Jaboro v. Wells Fargo Bank, N.A.,* Case No. 10–11686, 2010 WL 5296939, at *6 (E.D. Mich. Dec. 20, 2010) (Duggan, J.). Further, Article 9 is inapplicable because "Article 9 of the UCC applies to personal property, not real property." *Pace,* 2012 WL 5929931, at *2; *see also Brown v. Chase Bank, N.A.*, Case No. 12–11440, 2013 WL 1278523 (E.D. Mich. Jan. 18, 2013) *report and recommendation adopted,* 2013 WL 1281919 (E.D. Mich. Mar. 26, 2013).

### 8) *Real Estate Mortgage Investment Conduits (REMIC)*

Plaintiff also asserts a violation of the statutes and regulations governing Real Estate Mortgage Investment Conduits (REMIC).  This claim is without merit. A "'REMIC' is a real estate mortgage investment conduit, *i.e.*, an entity owning a collateralized pool of real estate mortgages and related securities that satisfy certain technical requirements in the Internal Revenue Code." *Brown, supra*, 2013 WL 1278523 *6 citing *In re Enron Corp. Securities, Derivative & ERISA Litigation*, 761 F. Supp .2d 504, 525 n.9 (S.D. Tex. 2011).  "The REMIC statutes and regulations, in other words, are tax laws. Even if they were violated, the harm was to the government, not to plaintiff, and plaintiff therefore has no viable cause of action based on defendant's alleged failure to comply with this statutes and regulations." *Brown, supra* (collecting cases).

16

### 9)  *Unjust Enrichment*

Defendants are also entitled to dismissal of Plaintiff's unjust enrichment claim (Dkt. 1; Compl. ¶ 29).  It is well established under Michigan law that a quasi-contract or implied contract theory, such as unjust enrichment, can only be maintained if the transaction in question is not the subject matter of an express contract.  *See Barber v. SMH (U.S.), Inc.*, 202 Mich.App. 366, 375, 509 N.W.2d 791, 796 (1993); *Kuhfeldt v. Liberty Mut. Ins. Co.*, 833 F.Supp. 632, 638 (E.D. Mich. 1993) ("There cannot be an express and an implied contract covering the same subject matter at the same time.")  Here, there was an express contract covering the mortgage and loan to Plaintiff, and thus an unjust enrichment claim is not viable. *See McCann v. U.S. Bank, N.A.*, 873 F.Supp.2d 823, 847 (E.D. Mich. 2012); *Collins v. Wickersham*, 862 F.Supp.2d 649, 657–58 (E.D. Mich. 2012) (Duggan, J.).

### 10)  *Quiet Title*

Plaintiff also asserts a claim for quiet title. "Although styled as a separate claim for relief, quiet title is a remedy and not a separate cause of action." *Steinberg v. Federal Home Loan Mortg. Corp.*, 901 F.Supp.2d 945, 955 (E.D. Mich. 2012) (Hood, J.).  Here, Plaintiff does not allege any facts demonstrating a legitimate title dispute, or showing that she has a superior interest in the property.  To the extent Plaintiff attacks the mortgage industry in general or any foreclosure proceedings that may have occurred, her challenge "does not address a legitimate title dispute." *Mekani v. Homecomings Financial, LLC*, 752 F.Supp.2d 785, 796 (E.D. Mich. 2010) (Borman, J.) (internal quotations omitted).

17

### 11)  *The Redemption Period Has Expired*

Plaintiff's lawsuit fails for yet another reason – after the expiration of the redemption period, Plaintiff had no standing to challenge the validity of the foreclosure as a matter of law.  Michigan's redemption statute provides:

> Unless the premises described in [a foreclosure sale deed] shall be redeemed within the time limited for such redemption as hereinafter provided, such deed shall thereupon become operative, and shall vest in the grantee therein named . . . all the right, title and interest which the mortgagor had at the time of the execution of the mortgage . . . .

MCL § 600.3236; *see also Senters v. Ottawa Sav. Bank, FSB*, 443 Mich. 45, 52–53 (1993) (recognizing that "the rights of the parties [are] controlled by statute").  As such, when the redemption period ends, "all the right, title, and interest which the mortgagor had at the time of the execution of the mortgage" vests in the purchaser of the property at the sheriff's sale.  *See Piotrowski v. State Land Office Bd.*, 302 Mich. 179, 182 (1942); *Mission of Love v. Evangelist Hutchinson Ministries*, Case No. 266219, 2007 WL 1094424, at *5 (Mich. Ct. App. Apr. 12, 2007);  *Awad v. Gen. Motors Acceptance Corp.*, Case No. 302692, 2012 WL 1415166, at *4 (Mich. Ct. App. Apr. 24, 2012).

A strict reading of the Michigan statute suggests that once the redemption period expires, a homeowner loses her legal interest in the property.  *See El-Seblani v. Indymac Mortgage Servs.*, Case No. 12–1046, 2013 WL 69226, at *3 (6th Cir. Jan. 7, 2013) (citing *Senters*, 503 N.W.2d at 643).  However, Michigan courts allow "an equitable extension of the period to redeem from a statutory foreclosure sale in connection with a mortgage foreclosed by advertisement and posting of notice in

18

order to keep a plaintiff's suit viable, provided he makes a clear showing of fraud, or irregularity by the defendant." *Id.* quoting *Schulthies v. Barron*, 167 N.W.2d 784, 785 (Mich. Ct. App. 1969) (internal quotation marks omitted)); *see also Overton v. MERS*, Case No. 284950, 2009 WL 1507342 (Mich. Ct. App. May 28, 2009); *Freeman v. Wozniak*, 617 N.W.2d 46, 49 (Mich. Ct. App. 2000).  Under *El-Seblani*, it is more accurate to determine, therefore, whether a homeowner has made a showing of "fraud or irregularity" in connection with the sale of her home sufficient to undo the divestment of the property.  *El-Seblani*, 2013 WL 68226, at *4.

A recent Sixth Circuit case indicates that whether the issue is classified as one of standing or a merits determination, one thing is certain: "a plaintiff mortgagor must meet this high standard in order to have a foreclosure set aside after the lapse of the statutory redemption period."  *Conlin v. MERS*, --- F.3d ---, Case No. 12–2021, 2013 WL 1442263, at *3 (6th Cir. Apr. 10, 2013) (citing *El-Seblani*) (internal quotation marks omitted).  The Sixth Circuit cautioned that not just any type of fraud would suffice.  Rather, "the misconduct must relate to the foreclosure process itself."  *Id.*

As discussed above, although the Court inquired directly of Plaintiff at the hearing as to whether she had any allegations to assert regarding fraud, there were none.  Plaintiff has failed to make a clear showing of fraud or irregularity in connection with the foreclosure process itself. Therefore, Plaintiff is not entitled to a rescission of the foreclosure sale.

19

### 12) *Leave to Amend*

In her response brief, Plaintiff requests leave to amend the Complaint (Dkt. 12 at 5). As a general rule, where a Complaint fails to state a claim, a Court should generally give a *pro se* party an opportunity to amend the Complaint, unless it plainly appears that the plaintiff will be unable to allege sufficient facts to state a claim. *See Brown v. Matauszak*, 415 Fed. Appx. 608, 614–15 (6th Cir. 2011); *Gordon v. England*, 354 Fed. Appx. 975, 981–82 (6th Cir. 2009). Notwithstanding this general rule, a Court may dismiss the action where amendment would be futile.

Here, Plaintiff raises a litany of vague, conclusory claims that have been repeatedly rejected by the federal courts. For example, regardless of any additional factual allegations Plaintiff could make, it is clear that her FDCPA claim fails because Defendants are not "debt collectors," and that her REMIC, "quiet title," and UCC claims provide no legal basis for relief. Furthermore, because the redemption period expired in December 2012, Plaintiff simply has no standing to challenge the foreclosure.[12] Thus, leave to amend in this case would be futile.

---

[12] Because the property was in foreclosure and the redemption period has expired, this case is in a materially different posture than *Young v. Green Tree,* E.D. Mich. Case No. 12-14738, referenced above (the case in which Mr. Lubkin appeared as counsel). In the *Young* case, the Court granted leave to amend because *Young* was not in foreclosure and, thus, there was no expiration of any redemption period. *See Conlin v. MERS,* --- F.3d ---, Case No. 12–2021, 2013 WL 1442263, at *3 (6th Cir. Apr. 10, 2013).

## III.  CONCLUSION

For the reasons set forth above, Defendants' motions to dismiss (Dkts. 4 & 17) are **GRANTED** and Plaintiff's motion to stay summary eviction proceedings (Dkt. 20) is **DENIED**.  Plaintiff's Complaint is hereby **DISMISSED WITH PREJUDICE**.

**SO ORDERED**.


s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

Dated:  May 31, 2013


## Certificate of Service

I hereby certify that this Order was electronically submitted on May 31, 2013, using the CM/ECF system, which will send notification to each party.


s/A. Chubb
Case Manager

21